THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LYNDON DUANE GOODELL, Appellant.

Fourth Department, December 21, 1990

APPEARANCES OF COUNSEL

*Robert C. Noonan, District Attorney,* for respondent.

*Stephen Brent* for appellant.

## OPINION OF THE COURT

DOERR, J.

On June 10, 1987, all four occupants of a Pembroke Central High School driver education car, three students and their teacher, were killed when the driver education car was struck in its own lane by an oncoming vehicle on Rt. 5 in the town of East Pembroke. Genesee County Sheriff's deputies, who were responding to a call that a vehicle was being driven erratically eastbound on Rt. 5, were among the first to come upon the accident scene. Defendant and Carol Rokicki, the occupants of the vehicle involved in the accident, a 1976 red Pontiac Grand Prix registered to Rokicki, suffered serious injuries. When discovered, Rokicki was outside of the vehicle on the passenger side and defendant was unconscious, lying on the front seat with his head hanging out the passenger door.

Rokicki testified against defendant at trial under a grant of immunity. She stated that on the morning of the accident she and defendant, both students at Bryant & Stratton, a business school in Buffalo, had been sitting in her car in the school parking lot drinking Jack Daniels. They decided to go to defendant's apartment in Batavia. Defendant was driving Rokicki's car, proceeding east on Rt. 5 and, on one occasion she told defendant to slow down. She remembered nothing more prior to the accident. Several other witnesses, who had been driving their cars on Rt. 5 prior to the accident, testified that they had observed a red car driven by a male, traveling at a high rate of speed and weaving about on the road.

Defendant was taken by ambulance to St. Jerome's Hospital in Batavia, then transferred that same day to the Erie County Medical Center (ECMC), where he remained in a coma for approximately two weeks. Blood samples were taken from defendant at St. Jerome's at 2:15 P.M. and at ECMC at 4:25 P.M. on the day of the accident. An expert witness for the People analyzed the samples and testified that the St. Jerome sample contained a .17 blood alcohol content and the ECMC sample contained a .10 blood alcohol content. Following a jury trial, defendant was convicted of four counts of manslaughter in the second degree, four counts of vehicular manslaughter in

the second degree, failure to keep right, and driving left of center.

On appeal, defendant argues that the blood test results were improperly admitted into evidence because samples of his blood were taken illegally. Vehicle and Traffic Law § 1194 (1) (which has been recodified as Vehicle and Traffic Law § 1194 [2] [a]), the implied consent statute, provides that anyone who drives an automobile in New York State has given consent to a blood test if the test is given at the direction of a police officer who has reasonable cause to believe that the person has operated a vehicle while intoxicated and "within two hours after such person has been placed under arrest for any such violation". Deputy Stone ordered that a sample of defendant's blood be taken by St. Jerome's Hospital personnel on the basis of this statutory authority. Defendant argues that the police did not comply with the statute because, at the time the test was ordered, they did not have reasonable cause to believe that he had been driving while intoxicated, nor was he under arrest for such an offense.

We conclude that the police did have reasonable cause to believe that defendant had been driving while intoxicated. Deputies had received a report from a citizen that a red car, the license of which matched Rokicki's license number, was being driven erratically on Rt. 5 a short period of time before the crash. Various witnesses told deputies on the scene that before the crash they had observed a red car being driven by a male at a high rate of speed, weaving all over the road. The crash occurred in the westbound lane, indicating that the Grand Prix was over the center line at the point of impact. Finally, Sheriff Call, who responded to the accident scene, was familiar with defendant from a prior incarceration in the Genesee County Jail, and knew that defendant had an alcohol problem. In our view, these facts were sufficient to provide the police with reasonable cause to believe that defendant was the driver of the vehicle and that he was intoxicated (see, People v Farrell, 89 AD2d 987, 988).

Defendant further contends that the police did not comply with the statute because a blood sample must be taken within two hours of defendant's arrest and the police had not arrested him. The People concede that defendant was not formally arrested nor was he given Miranda warnings (see, Miranda v Arizona, 384 US 436) before the blood sample was drawn. They contend, however, that formal arrest was not necessary because defendant was in a comatose state and

would not have comprehended nor appreciated the formalities of an arrest. They argue that the police possessed probable cause to arrest defendant at the time the test was ordered and this should be sufficient in the case of a comatose defendant. We agree.

It is already settled that a blood sample may be drawn pursuant to the implied consent statute from an incapacitated or unconscious driver without his consent (see, People v Hall, 61 NY2d 834, 835; People v Kates, 53 NY2d 591, 596). The issue to be determined here is whether that unconscious or incapacitated driver must be formally arrested before the blood test may be administered. In our view, if the driver is comatose or otherwise incapacitated so that the driver cannot appreciate the significance of an arrest, a chemical test may be administered so long as the police who ordered the test possess probable cause to arrest the driver (see, United States v Harvey, 701 F2d 800, 806; State v Oevering, 268 NW2d 68, 73-74 [Minn]; Galvan v State, 98 Nev 550, 655 P2d 155).

Defendant relies on the decision of the Third Department in People v Almond (151 AD2d 820, lv denied 74 NY2d 804) to support his argument that a comatose driver must be formally arrested before a blood test can be administered. In Almond, defendant was the driver of the vehicle involved in an accident which produced three fatalities. Defendant was taken by ambulance to a hospital for treatment and a police officer followed to obtain a blood sample. When the officer arrived at the hospital, defendant was conscious but hysterical. He was sedated and, once defendant was sedated, the officer ordered the blood test. Defendant was never restrained, left the hospital voluntarily several days later, and was not taken into custody until after an indictment was returned. Here, defendant was in a comatose state as a result of his injuries when the test was administered. Defendant remained in a coma for approximately two weeks and was still in the hospital when an indictment was returned. Moreover, Deputy Stone, who obtained the blood sample from defendant at St. Jerome's Hospital, testified at trial that, in his view, defendant was under arrest at the time the blood was drawn. Although People v Almond (supra) can be distinguished from the present case on its facts, to the extent that that decision by the Third Department can be read to stand for the proposition that the formal arrest of a comatose driver is an absolute prerequisite to the administration of a chemical test under the implied consent statute, we decline to follow it.

■ Further blood samples were taken from defendant at ECMC later the same afternoon, on the authority of an order of Genesee County Court, issued pursuant to Vehicle and Traffic Law § 1194-a (2) (recodified as Vehicle and Traffic Law § 1194 [3]). Defendant moved to suppress the results of the tests on these samples, arguing that an order pursuant to this section was not properly issued. Following a suppression hearing, the court determined that although the application for an order failed to contain the information required by statute, it could be upheld as a proper application for a search warrant. We agree. The Court of Appeals has acknowledged that Vehicle and Traffic Law § 1194 (3) (b) is only one means of obtaining an order requiring a person to submit to a chemical test. If Penal Law violations as well as Vehicle and Traffic Law violations are involved, a search warrant may be issued to obtain a blood test if there is probable cause to believe that there has been a crime committed (see, People v Casadei, 66 NY2d 846; see also, Matter of Abe A., 56 NY2d 288; People v Mills, 124 AD2d 600, 601, lv denied 69 NY2d 953). The transcript of the testimony at the hearing held on the application for an order to submit to a chemical test reveals that the court properly found probable cause to believe that defendant had committed vehicular manslaughter, and a search warrant was properly issued.

■ Defendant further argues that the ECMC blood test results should have been suppressed because the blood was drawn after the Genesee County Sheriff telephoned personnel at ECMC and informed them that an order had been issued, but prior to the delivery of the order to the hospital. Considering the exigency of the circumstances, and the fact that the blood sample was not handed over to the Sheriff until the order had been delivered to the hospital, this procedure can be upheld (cf., People v Mahoney, 58 NY2d 475, 480). We have examined defendant's remaining challenges to the validity of the warrant and find them to be without merit.

■ Defendant further contends that he was denied due process by the People's delaying until trial to turn over the statement of Stephanie Lasker. Defendant characterizes the statement as Brady material (see, Brady v Maryland, 373 US 83), because Lasker told investigators that when she observed Rokicki and defendant sitting in Rokicki's car in the Bryant & Stratton parking lot, Rokicki was in the driver's seat. The People argue that this evidence is not exculpatory because it was consistent with Rokicki's Grand Jury testimony that she was sitting in the driver's seat while she and defendant were

in the parking lot. Rokicki further testified, however, that before the car was put in motion, they switched places and defendant drove the vehicle. Even if Lasker's statement can be considered to be exculpatory, it is undisputed that this statement was turned over to defense counsel at trial prior to the taking of any testimony. When *Brady* material is turned over during trial, defendant's right to a fair trial is not violated when "he is given a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witnesses or as evidence during his case" *(People v Cortijo,* 70 NY2d 868, 870; *see also, People v Brown,* 67 NY2d 555, 559, *cert denied* 479 US 1093). Here, defendant was given a meaningful opportunity to use Lasker's statement at trial and reversal is not warranted.

■ At the time of trial, defendant suffered from retrograde amnesia and could remember very little of what occurred two weeks prior to and two weeks subsequent to the accident. Prior to trial, defendant moved, pursuant to CPL article 730, to be declared unfit to stand trial by virtue of his inability to remember the circumstances surrounding the accident. After a court-appointed psychiatrist and psychologist both concluded that defendant understood the nature of the charges against him and could assist in his own defense, the court denied defendant's motion but ordered expanded discovery. Upon our review of the record, we conclude that defendant was not deprived of a fair trial by his inability to recall the events *(see, People v Francabandera,* 33 NY2d 429; *People v Wright,* 105 AD2d 1088, *after remand* 124 AD2d 1015, *lv denied* 69 NY2d 751).

We find that the convictions are supported by sufficient evidence and are not contrary to the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490). Viewing the circumstances of this case in their totality and as of the time of the representation, we conclude that defendant was not denied the effective assistance of counsel *(see, People v Baldi,* 54 NY2d 137; *People v Dietz,* 79 AD2d 479, 480). Defendant failed to preserve for review his arguments concerning the court's charge to the jury and we decline to reach them in the interest of justice. We have examined the remaining contentions advanced by defendant and find them to be without merit.

Accordingly, the judgment of conviction should be affirmed.

CALLAHAN, J. P., BOOMER, PINE and LAWTON, JJ., concur.

Judgment unanimously affirmed.