(May 17, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONTIE MITCHELL, Appellant. [724 NYS2d 229] —Crew III, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered December 23, 1997, upon a verdict convicting defendant of the crimes of attempted robbery in the first degree (two counts), robbery in the first degree, criminal use of a firearm in the first degree, grand larceny in the fourth degree and criminal possession of a weapon in the second degree (two counts).

As the result of a string of robberies that took place in the City of Albany, defendant was indicted and charged with two counts of robbery in the first degree, two counts of attempted robbery in the first degree, one count of criminal use of a firearm in the first degree, one count of grand larceny in the fourth degree, two counts of criminal possession of a weapon in the second degree and one count of criminal possession of stolen property in the fifth degree. Following a jury trial, defendant was convicted of, *inter alia*, robbery in the first degree, for which he was sentenced to an indeterminate term of imprisonment of 12½ to 25 years.

On this appeal, defendant first contends that the statements

obtained from him, as well as the physical evidence seized, were inadmissible because the initial police encounter with him was in contravention of the dictates of CPL 140.50 (1). We disagree.

The record reflects that Albany police detectives, during the course of their ongoing investigation, received information that two persons believed to be suspects in the Albany robberies had been involved in a criminal trespass at Robert's Towing on US Route 9W in the Town of Bethlehem, Albany County, just outside of Albany. One of the suspects had been arrested by police officers from the Town of Bethlehem, Albany County, but the second had eluded arrest. The Albany detectives, while riding along Route 9W very near Robert's Towing, observed defendant in a Stewart's mart. Because defendant fit the description of the person who eluded arrest by the Bethlehem police, as well as one of the Albany robbery suspects, and because he seemed to be giving the detectives an inordinate amount of attention on the several occasions that they drove by, the detectives entered Stewart's and asked defendant his name, where he lived, how long he had been at Stewart's and what he was doing in the area. Based upon defendant's answers, which the detectives were able to determine were patently false, defendant was advised that the detectives were conducting a criminal investigation and he was asked if he was willing to accompany them to police headquarters to assist them in that regard. Defendant agreed to do so and, at headquarters, following *Miranda* warnings, he confessed to the robberies in question.

Defendant posits an interesting question. He contends that the Albany police detectives were acting outside of their jurisdiction and were, thus, without authority to question him. Specifically, defendant points to CPL 140.50 (1) which provides, in pertinent part, that "a police officer may stop a person in a public place located within the geographical area of such officer's employment" when he or she has reasonable suspicion that such person is committing, has committed or is about to commit a crime. That section is the codification of the well-known "stop and frisk" doctrine established in *Terry v Ohio* (392 US 1) and is the third level of permissible police encounters delineated in *People v De Bour* (40 NY2d 210) and *People v Hollman* (79 NY2d 181). Contrary to defendant's contention, however, the initial encounter here did not constitute a "stop" as contemplated by *Terry* and *People v Cantor* (36 NY2d 106). What we have here is the first level of police intrusion enunciated in *De Bour* and *Hollman*, a simple request for information

which need only be supported by an articulable reason justifying such action (*see, People v Hollman, supra,* at 189).

Here, the record amply justifies such a request. When defendant gave false responses to the informational questions posed, the detectives were justified in proceeding to the second level of inquiry and, thus, their inquiry as to whether defendant was willing to accompany them to headquarters was permissible. Moreover, the record suggests that the detectives had a description of the perpetrator of the Albany robberies and that defendant fit that description. That fact alone would justify a common-law inquiry. To the extent that defendant suggests that police officers engaged in an ongoing criminal investigation are not at liberty to conduct inquiries outside their territorial jurisdiction, we disagree. Such a concept would be the antithesis of good policing and contrary to the public interest. We have examined defendant's remaining contentions and find them either to be unpreserved or without merit.

Mercure, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.