(March 27, 2003)

■ The People of the State of New York, Respondent, v George Johnson, Appellant. [757 NYS2d 349] —Rose, J. Appeals (1) from a judgment of the County Court of Schenectady County (Eidens, J.), rendered August 1, 2000, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), burglary in the first degree (three counts), robbery in the first degree (three counts), robbery in the second degree and arson in the third degree, and (2) by permission, from an order of said court, entered February 8, 2001, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Ten months after a fire and the deaths of two elderly women at the house they shared in the City of Schenectady, Schenectady County, in December 1998, the investigation of those events led city police investigators, John Sims and Robert McHugh, to Mississippi in search of defendant. While there, and before the filing of any accusatory instrument in New York, Sims and McHugh received a lead that resulted in defendant's apprehension across the state line in Eutaw, Alabama. While the officers were in Alabama, but without their knowledge, a Mississippi police investigator, Joe Boswell, obtained a fugitive-from-justice warrant from a Mississippi judge based on Boswell's mistaken belief that charges had been filed against defendant in New York. Although no Alabama police officer was present when Sims and McHugh initially detained defendant

and placed him in a Mississippi police car,[1] an Alabama county sheriff, Johnny Isaac, joined them within 35 minutes and prior to any interrogation. After Isaac confirmed defendant's willingness to leave in the custody of Sims and McHugh rather than remain in Alabama in Isaac's custody, they returned to a police station in Mississippi. There, following a written waiver of his *Miranda* rights and in response to questioning by Sims and McHugh, defendant made oral and written statements describing his participation in the robberies and homicides of the two Schenectady women. Copies of these statements, together with a previously drafted felony complaint, were then presented to a Schenectady City Court Judge to obtain a warrant for his arrest. After returning to New York, defendant was charged by indictment with multiple counts of murder, burglary, robbery and arson.

Following a four-week jury trial, defendant was convicted of 10 of the 11 charges against him, and County Court later sentenced him to the maximum prison term on each charge, with those relating to separate crimes against each victim running consecutively.[2] After sentencing, defendant moved pursuant to CPL 440.10 to vacate his conviction on the ground that Aaron Umber, who pleaded guilty to charges arising from his own role in these crimes, had recanted his trial testimony implicating both himself and defendant. Finding Umber's recantation to be unbelievable, County Court denied defendant's motion. Defendant now appeals from the judgment of conviction and, by permission, from the denial of his CPL 440.10 motion.

We turn first to defendant's contention that County Court erred in refusing to suppress his oral and written confessions because they were obtained in violation of the right to counsel that allegedly attached upon issuance of the Mississippi fugitive-from-justice warrant, because there was no probable cause for his arrest, and because his arrest became illegal when Sims, McHugh and Isaac failed to comply with Alabama law. Under New York law, which we apply because "procedural and evidentiary issues are governed by the law of the forum" (*People v Benson*, 88 AD2d 229, 231 [1982]; *see People v Ostas*, 179 AD2d 893, 894 [1992], *lv denied* 80 NY2d 932 [1992]), the right to counsel attaches indelibly and, therefore, may not be waived in counsel's absence, in two situations. "First, it arises when

---

1. The New York officers, however, were accompanied by a Mississippi police officer.

2. With the automatic reduction provided in Penal Law § 70.30 (1) (e)(viii), the aggregate term of defendant's imprisonment is 50 years to life.

formal judicial proceedings begin, whether or not the defendant has actually retained or requested a lawyer. Second, the right to counsel attaches when an uncharged individual 'has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter' " (*People v Ramos*, 99 NY2d 27, 32-33 [2002] [citations omitted], quoting *People v West*, 81 NY2d 370, 373-374 [1993]; *see People v Gloskey*, 105 AD2d 871, 872 [1984]). Although the right to counsel also has been found to attach where there is significant judicial activity (*see People v Sugden*, 35 NY2d 453, 461 [1974]), a defendant may nonetheless waive that right without the presence of counsel (*see People v Coleman*, 43 NY2d 222, 226 [1977]).

In this case, defendant's right to counsel did not attach prior to questioning by Sims and McHugh because no accusatory instrument had yet been filed in New York and the warrant issued in Mississippi based on a Mississippi officer's mistaken belief did not constitute an accusatory instrument because it charged no crime (*see* CPL 1.20 [1]; *People v Gloskey, supra* at 872). Nor did the mere issuance of the Mississippi fugitive-from-justice warrant constitute significant judicial activity. However, even if the issuance of the Mississippi warrant were considered to be sufficient judicial activity to trigger the right to counsel, defendant's later waiver of that right would still be effective (*see People v Coleman, supra* at 226).

Also unavailing is defendant's alternate contention that his statements should have been suppressed because his warrantless arrest was made without probable cause. Prior to defendant's arrest, Sims and McHugh were aware that Elise Ottendorf, a friend of defendant, had averred that defendant admitted stealing jewelry from the victims' residence and participating in their homicides. Connie Maier, who formerly lived with defendant, similarly averred that defendant had admitted participation in the homicides. Other evidence, including Umber's statement naming defendant as a participant in the crimes, also implicated him. These sworn statements were more than sufficient to support this warrantless arrest (*see People v Bailey*, 295 AD2d 758, 759 [2002], *lv denied* 99 NY2d 533 [2002]; *People v Bourdon*, 258 AD2d 810, 811 [1999], *lv denied* 93 NY2d 897 [1999]).

Nor do we find merit in defendant's argument that his arrest in Alabama violated Alabama law. Generally, police officers from New York have no power to make arrests outside their geographic jurisdiction (*cf. People v La Fontaine*, 235 AD2d 93, 95 [1997], *revd on other grounds* 92 NY2d 470 [1998]). There is

an exception, however, where the officers are actively assisted by officers of the state where the arrest is made (*see People v Perea*, 182 AD2d 718, 719 [1992], *lv denied* 80 NY2d 836 [1992]; *People v Wallace*, 155 AD2d 708, 709 [1989], *lv denied* 75 NY2d 819 [1990]). Even if not so assisted, the officer's out-of-state actions may be allowable as a "citizen's arrest" pursuant to the law of the state where the arrest is made (*see People v La Fontaine, supra* at 96-99).

Since Sims and McHugh apprehended defendant outside their geographic jurisdiction in the absence of an Alabama police officer, the arrest here can only be justified when viewed as a citizen's arrest. Such a warrantless arrest by a private person is expressly authorized under Alabama law (*see* Ala Rules of Crim Pro, rule 4.1 [b] [1] [i]). Once arrested, however, defendant had a statutory right to be delivered to a judge, magistrate or law enforcement officer without unnecessary delay (*see* Ala Rules of Crim Pro, rule 4.1 [b] [2]; Ala Code § 15-10-7 [e]). Isaac's presence at the scene within 35 minutes after defendant's arrest clearly satisfied this requirement. If defendant had been taken into Isaac's custody, then Isaac would have been obligated to give him an appearance ticket, allow him to make bail or take him before a judge or magistrate within 48 hours (*see* Ala Rules of Crim Pro, rule 4.3 [a] [1]). Isaac's testimony at the suppression hearing established that he asked defendant whether defendant wished to be detained by Isaac and questioned in Alabama, or to return to Mississippi in the custody of Sims and McHugh. At trial, defendant testified that he responded to Isaac's question by saying that he was willing to go back to Mississippi with Sims and McHugh. Thus, the record clearly demonstrates that it was by defendant's choice that he was not transferred into Isaac's custody and that, as a result, Isaac was not required to allow him bail or take him to a judge. Accordingly, we find that this citizen's arrest did not violate Alabama law. In any event, even if defendant's arrest were deemed to be illegal, the record does not support a finding that Sims, McHugh or Isaac knowingly or intentionally deprived defendant of a statutory right. Without more, such a violation of statutory requirements does not mandate suppression (*see People v Sampson*, 73 NY2d 908, 909-910 [1989]).

Next, we turn to defendant's contention that County Court improperly instructed the jury regarding the voluntariness of his oral and written statements by omitting the so-called "truthfulness" portion of the charge suggested in the New York Criminal Jury Instructions (hereinafter CJI) (*see* 1 CJI[NY] 11.01, at 656). Since it was a key defense strategy to present

evidence contradicting certain factual assertions in his confession, defendant maintains that County Court's instruction effectively permitted the jury to consider his statements as evidence against him regardless of their truth or falsity. Specifically, defendant's incriminating oral and written statements included a description of how he and the other perpetrators gained access to the victims' house by using a ladder placed between the second-floor windows of the victims' house and a neighboring building. Defendant contends that the credible evidence at trial shows that such an entry was impossible, thus proving the falsity of his statement.

Pursuant to CPL 710.70 (3), a criminal defendant is entitled "to relitigate the issue of the voluntariness of a statement before the jury" (*People v Pulliam*, 258 AD2d 681, 683 [1999], *lv denied* 93 NY2d 977 [1999]). Once a defendant raises a question of fact regarding voluntariness, the trial court must instruct the jury to disregard the statement if it is found to have been involuntarily made (*see* CPL 710.70 [3]; *People v Perretti*, 278 AD2d 597, 598 [2000], *lv denied* 96 NY2d 762 [2001]). To meet this requirement, the CJI supply this model charge: "I now instruct you that even though the statement has been admitted into evidence and you are aware of its contents, you must give no weight whatsoever to the statement in arriving at your verdict unless you find, in accordance with my instructions, first that it was 'voluntarily made' and second, that it was 'truthful' " (1 CJI[NY] 11.01, at 656). As thus stated, this "voluntariness" charge would require the jury to find a defendant's statement to be both voluntary and truthful before considering it as evidence or giving it any weight whatsoever. However, CPL 710.70 (3) makes no reference to truthfulness, and the courts have stated that the appropriate charge need only include "instructions to ignore the statement if [the jury] determines that it was involuntarily made" (*People v Perretti, supra* at 598; *see People v Luis*, 189 AD2d 657, 659 [1993]). Because County Court also correctly instructed the jury as to the standards by which it must evaluate the credibility and weight of all witness statements (*see* 1 CJI[NY] 7.02-7.04, at 265-272), the omission of the "truthfulness" portion of CJI charge 11.01 was not error (*see People v Bowen*, 134 AD2d 356, 357 [1987], *lv denied* 70 NY2d 929 [1987]).

Next, we reject defendant's challenge to the sufficiency and weight of the evidence. Defendant admitted, in a signed and detailed confession, that on the night in question he, Umber and Vincent O'Connor entered the victims' home for the purpose of robbing them by using a ladder placed between a

window in their home and a window of a neighboring building.[3] Umber also testified that he, defendant and O'Connor gained access to the victims' house for the purpose of robbing it by placing a ladder between the two buildings. Umber further testified that defendant restrained one victim while Umber punched her and struck her in the back of the head, that defendant placed various items in a bag while inside the victims' residence, that he saw the second victim laying motionless with an injury to the back of her head and that, after leaving the victims' residence, defendant and O'Connor returned to start a fire and destroy the evidence, including the victims' bodies. Jamie Faye, defendant's relative through marriage, and Edward Stover, who had known defendant since 1996, both testified that defendant admitted participating in these crimes.

As to the ladder theory of entry, the record plainly belies defendant's claim of physical impossibility. Conveniently overlooking the undisputed testimony of the evidence technician that the distance between the victims' house and the neighboring building was a mere four feet, defendant rests his contention on the fact that the windows in the two buildings do not directly line up. However, as testified to at trial, the angle between the window in the neighboring building and one of the victim's windows was not so great as to preclude the placement of a ladder between them. Significantly, defendant, in a drawing attached to his signed confession, drew the subject buildings and lines representing the ladder used for access at an angle from one window to the other. Moreover, pictures submitted by the defense at trial confirm that the two buildings are in close proximity and that the offset between the two windows is far from insurmountable given the closeness. Accordingly, we conclude that the evidence was legally sufficient to establish a prima facie case for all 10 convictions (*see People v Luck*, 294 AD2d 618, 619 [2002], *lv denied* 98 NY2d 699 [2002]; *People v Zabala*, 290 AD2d 578, 578 [2002], *lv denied* 97 NY2d 735 [2002]), and that the jury's verdict was supported by the weight of that evidence (*see People v Alford*, 287 AD2d 884, 887 [2001], *lv denied* 97 NY2d 750 [2002]; *People v Williams*, 284 AD2d 564, 568 [2001], *lv denied* 96 NY2d 909 [2001]).

---

3. Other evidence at trial indicated that such an elevated entry was selected because the doors and the windows of the first floor of the victims' house were securely locked and protected by an externally-monitored alarm system. Also, such access was facilitated by an alleged drug addict and fence who resided on the second floor of the neighboring building and who furnished the metal ladder used to bridge the narrow four-foot-wide alleyway between the two buildings.

Defendant's remaining contentions, including his challenge to the legality and excessiveness of the sentence, have been reviewed and found to be without merit.

Crew III, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the judgment and order are affirmed.