[889 NYS2d 813]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TIMOTHY S. LeROW, Respondent.

Fourth Department, November 20, 2009

**APPEARANCES OF COUNSEL**

*David W. Foley, District Attorney*, Mayville (*Derek V. Gregory* of counsel), for appellant.

*James P. Subjack*, Fredonia, for respondent.

**OPINION OF THE COURT**

PERADOTTO, J.

■ The primary issue on this appeal by the People from an order granting defendant's motion to suppress the results of a chemical blood alcohol test is one of first impression, namely, whether a New York State police officer has the authority, pursuant to New York's implied consent statute (Vehicle and Traffic Law § 1194 [2] [a]), to direct the withdrawal of blood from a suspect who is physically located outside of the state. We agree with the People that, under the circumstances of this case, County Court erred in suppressing the results of the blood test. We therefore conclude that the order insofar as appealed from should be reversed.

### Factual History and Procedural Background

On June 29, 2007, shortly before midnight, defendant was involved in a single-vehicle motorcycle accident in the Town of Charlotte. Defendant was traveling at a high rate of speed when he failed to negotiate a curve in the road, drove off the roadway, struck a large rock, and was ejected from his motorcycle. An eyewitness and police and fire officials who responded to the scene of the accident detected alcohol on defendant's breath. Defendant was initially transported to WCA Hospital (WCA) in Jamestown, New York, and was later transferred to Hamot Medical Center (Hamot) in Erie, Pennsylvania. Chautauqua County Sheriff's Deputy Forsberg traveled to Hamot and asked a registered nurse to obtain a blood sample from defendant, who was unconscious. After Deputy Forsberg explained the procedures for a legal blood draw in New York State and supplied a blood draw kit, the nurse complied with his request and drew a sample of defendant's blood. A subsequent blood test performed in New York revealed that defendant had a .12% blood alcohol content.

Thereafter, defendant was indicted by a Chautauqua County grand jury and was charged with two counts of driving while intoxicated ([DWI] Vehicle and Traffic Law § 1192 [2], [3]). Defendant moved to suppress the results of the blood test and contended, inter alia, that the police lacked probable cause to

arrest him and that the blood sample was obtained without his consent and in violation of Pennsylvania law. At the suppression hearing, the eyewitness estimated that defendant was traveling at a speed of approximately 75 to 80 miles per hour immediately prior to the accident. When the eyewitness approached defendant and attempted to ascertain if defendant was breathing, he smelled the odor of alcohol emanating from defendant's body. The eyewitness relayed this observation to the police officers who responded to the scene.

Deputy Desnerck of the Chautauqua County Sheriff's Department testified at the suppression hearing that he was the first officer to respond to the scene. Upon his arrival, defendant was being treated by members of the fire rescue unit, who indicated to the Deputy that defendant had been drinking. Deputy Desnerck knelt down beside defendant in an attempt to engage him in conversation, but defendant was unable to respond. At that point, the Deputy detected the odor of alcohol on defendant's breath, and he requested the presence of a DWI unit.

Deputy Forsberg, a member of the DWI unit, testified that he responded to the accident scene and spoke with Deputy Desnerck and the eyewitness, each of whom informed him that they had detected the odor of alcohol on defendant. Defendant was airlifted to WCA, and Deputy Forsberg followed the helicopter to the hospital. When Deputy Forsberg asked staff members at WCA to obtain a blood sample, they refused to do so, advising him that they were performing only lifesaving measures. Defendant was thereafter transported by Starflight to Hamot, the hospital in Pennsylvania. As previously noted, defendant was unconscious when Deputy Forsberg arrived at Hamot, and a registered nurse complied with his request to obtain a blood sample. Deputy Forsberg testified that he followed the same procedure in Pennsylvania for obtaining a blood sample that he would have followed had defendant been located in New York.

Following the suppression hearing, the court denied defendant's suppression motion, concluding that Deputy Forsberg had reasonable cause to believe that defendant had been operating his motorcycle in violation of Vehicle and Traffic Law § 1192 and reasoning that "[d]efendant should not be allowed to obtain a fortuitous benefit simply because medical personnel chose to treat him at a facility outside of New York State." Defendant then filed a motion for reconsideration, contending that his blood was withdrawn in violation of a Pennsylvania statute (75

Pa Cons Stat § 3755 [a]), which according to defendant required that blood be withdrawn by an emergency room physician or his or her designee. In granting defendant's motions for reconsideration and for suppression, the court agreed with defendant that the blood was not drawn in compliance with Pennsylvania law. The court further concluded that, under New York's implied consent law, a New York police officer may not request the withdrawal of blood from an unconscious suspect while the suspect is located outside of the state.

## Discussion

■ We note at the outset that the People are correct that New York law applies to the administration of defendant's blood test because "procedural and evidentiary issues are governed by the law of the forum" state (*People v Benson*, 88 AD2d 229, 231 [1982]; *see People v Johnson*, 303 AD2d 903, 904 [2003], *lv denied* 100 NY2d 539 [2003]; *People v Sebelist*, 206 AD2d 901 [1994], *lv denied* 84 NY2d 910 [1994]), and "New York has a paramount interest in the application of its laws to this case" (*Benson*, 88 AD2d at 231; *see People v Ostas*, 179 AD2d 893, 894 [1992], *lv denied* 80 NY2d 932 [1992]).

Under New York's implied consent law, any person who operates a motor vehicle within the state is deemed to have consented to a chemical blood alcohol test conducted "at the direction of a police officer . . . having reasonable grounds to believe" such person to have been operating a motor vehicle in violation of Vehicle and Traffic Law § 1192, provided that the test is administered "within two hours after such person has been placed under arrest for any such violation" (§ 1194 [2] [a] [1]; *see People v Goodell*, 79 NY2d 869, 870 [1992]). "Where these conditions are satisfied, the statute furnishes authority for the administration of a blood alcohol test even in the absence of a court order or the suspect's actual consent" (*id.*). A formal arrest is not required where the suspect is unconscious or is otherwise unable to appreciate the significance of an arrest (*see Goodell*, 164 AD2d 321, 325 [1990], *affd* 79 NY2d 869 [1992]; *People v Bradway*, 285 AD2d 831, 833 [2001], *lv denied* 97 NY2d 639 [2001] ["the necessity of a formal arrest prior to a blood test may be 'vitiated by (a) defendant's unconscious and delirious condition' " (quoting *People v Bagley*, 211 AD2d 882, 883 [1995], *lv denied* 86 NY2d 779 [1995])]; *see also People v Skinner*, 203 AD2d 891 [1994], *lv denied* 84 NY2d 832 [1994]). Under those circumstances, a chemical blood alcohol test may be

administered provided that the police officer who orders the test has probable cause to arrest the suspect (see *Goodell*, 164 AD2d at 325; see also *People v Carkner*, 213 AD2d 735, 739 [1995], *lv denied* 85 NY2d 970 [1995], 86 NY2d 733 [1995]).

■ The People contend that, at the time the blood test was ordered, Deputy Forsberg had probable cause to believe that defendant had been operating his motorcycle under the influence of alcohol, in violation of Vehicle and Traffic Law § 1192. We agree. Upon arriving at the scene, Deputy Forsberg spoke with two other deputies and an eyewitness, each of whom indicated that defendant had been traveling at a high rate of speed immediately prior to the accident. Defendant's motorcycle had crossed over into the left lane of the roadway and entered an adjoining yard, where the motorcycle crashed into a large rock and defendant was ejected therefrom. Both Deputy Desnerck and the eyewitness informed Deputy Forsberg that they detected the odor of alcohol emanating from defendant. We therefore conclude from the totality of the circumstances, including the nature of the accident and the odor of alcohol detected by the eyewitness and police and fire personnel, that there was probable cause to believe that defendant was driving in violation of Vehicle and Traffic Law § 1192 (see *People v Mojica*, 62 AD3d 100, 114 [2009], *lv denied* 12 NY3d 856 [2009]; *People v Scalzo*, 176 AD2d 363, 364 [1991], *mot to amend remittitur granted* 178 AD2d 444 [1991]; *People v Rollins*, 118 AD2d 949, 950 [1986]).

Thus, Deputy Forsberg complied with the requirements of Vehicle and Traffic Law § 1194 inasmuch as defendant's blood was drawn by a registered nurse at his direction and based upon the requisite probable cause that defendant had been operating his vehicle while under the influence of alcohol (see Vehicle and Traffic Law § 1194 [2] [a] [1]; [4]). Here, however, because defendant's blood was drawn at a hospital in Pennsylvania, the issue is whether Deputy Forsberg, a New York State police officer, had the authority to order a blood draw in Pennsylvania. In other words, what is the effect of New York's implied consent law beyond the territorial jurisdiction of the state?

As noted at the outset, the specific question of whether a New York State police officer has the authority, under New York's implied consent law, to direct the withdrawal of blood from a suspect who is physically located outside of the state is a case of first impression in New York. "Generally, police officers have no power, including the authority to arrest, outside their geographical jurisdiction" (*People v La Fontaine*, 235 AD2d 93, 95 [1997],

*revd on other grounds* 92 NY2d 470 [1998], *rearg denied* 93 NY2d 849 [1999]; *see also People v Johnson*, 303 AD2d 903, 905 [2003], *lv denied* 100 NY2d 539 [2003]). Nonetheless, law enforcement officers may conduct investigations and collect evidence, including by seizure, outside their jurisdictional territory (*see People v Neil*, 24 AD3d 893 [2005]; *People v Mitchell*, 283 AD2d 769, 770-771 [2001], *lv denied* 97 NY2d 642 [2001], 97 NY2d 731 [2001]; *People v Buggenhagen*, 57 AD2d 466, 470 [1977]). Thus, courts in various other states have concluded that a police officer may direct the withdrawal of blood from a DWI suspect who has been transported across state lines for medical treatment because "this type of evidence gathering activity by a law enforcement officer is not limited to the officer's territorial jurisdiction" (*Johnson v Department of Transp.*, 683 NW2d 886, 890 [ND]; *see People v Every*, 184 Ill 2d 281, 289, 703 NE2d 897, 901 [1998] ["Although the deputy does not have official powers beyond the state's borders, he is still an agent of the state, and we believe that he continued to possess the authority to collect evidence from the defendant, even in another state"]; *State v Wagner*, 359 NW2d 487, 490 [Iowa 1984] [characterizing Iowa state trooper's actions in directing medical technicians at Wisconsin hospital to draw defendant's blood as "the type of evidence gathering activities which do not depend on a grant of authority from a sovereign body"]).

Here, although Deputy Forsberg was no longer cloaked with state authority once he crossed the border into Pennsylvania, we conclude that he nonetheless remained a "police officer" for purposes of administering New York's implied consent law, even though defendant was physically located in Pennsylvania when the Deputy requested the blood draw (*see* Vehicle and Traffic Law §§ 132, 1194 [2] [a] [1]; CPL 1.20 [34] [b]; *see also Every*, 184 Ill 2d at 289, 703 NE2d at 901; *State v Stevens*, 224 Conn 730, 742, 620 A2d 789, 795 [1993]). Section 1194 contains no geographic limitation on a police officer's authority to direct medical personnel to draw blood from a suspect motorist for purposes of blood alcohol testing. In our view, where, as here, an accident occurs in New York and the circumstances giving rise to an officer's reasonable grounds to believe that a suspect has violated Vehicle and Traffic Law § 1192 arise in New York, the mere fortuity of the suspect's removal from the state for the purpose of medical treatment should not deprive New York of the ability to enforce its laws proscribing the operation of a motor vehicle on its roadways while under the influence of alcohol.

As the Illinois Supreme Court reasoned in confronting analogous facts, "[t]he defendant should not be released from the statutory consequences of his [or her] actions merely because [the defendant] was taken to an adjoining state for treatment of his [or her] injuries" (*Every*, 184 Ill 2d at 287, 703 NE2d at 900).

Moreover, we conclude that the enforcement of New York's implied consent statute in this case does not infringe upon the sovereignty of Pennsylvania or otherwise offend Pennsylvania public policy. Indeed, Pennsylvania has a similar implied consent statute, which provides in relevant part that

> "[a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood . . . if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle . . .

> "in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance)" (75 Pa Cons Stat § 1547 [a] [1]).

Pennsylvania law broadly defines the term "police officer" as "[a] natural person authorized by law to make arrests for violations of law" (75 Pa Cons Stat § 102). Contrary to the contention of defendant and the conclusion of the suppression court, Pennsylvania's implied consent statute does not require that blood be withdrawn by an emergency room physician or his or her designee, but instead requires only that a "qualified person" conduct the test (75 Pa Cons Stat § 1547 [c] [2] [i]). In fact, the statute provides that no "physician, nurse or technician" who withdraws blood at the request of a police officer pursuant to the statute shall be "civilly liable" (75 Pa Cons Stat § 1547 [j]), thereby indicating that the registered nurse who drew defendant's blood in this case is a "qualified person" under Pennsylvania law. The phrase "emergency room physician or his designee" appears in a separate section of Pennsylvania law, which *requires* that emergency room personnel "promptly" take blood samples from a person involved in a motor vehicle accident where there is probable cause to believe that alcohol was involved in the crash (75 Pa Cons Stat § 3755 [a]).

In view of the fact that Pennsylvania has a similar implied consent statute and, indeed, requires the taking of a blood

sample where a serious accident is suspected to be alcohol-related, even in the absence of a request from a police officer, it cannot be said that Deputy Forsberg's request violated Pennsylvania law or otherwise offended Pennsylvania's public policy. Notably, a Pennsylvania court presented with a similar issue refused to suppress the results of a blood test despite the fact that the blood was drawn in Port Jervis, New York, where the defendant was hospitalized (*Commonwealth v Graydon*, 22 Pa D & C 4th 128 [Ct Com Pl 1994]).

■ With respect to defendant's contention that Deputy Forsberg should have obtained a search warrant or a court order before requesting the withdrawal of defendant's blood, we note that there is no such requirement in Vehicle and Traffic Law § 1194 (*see Goodell*, 79 NY2d at 870; *People v Dombrowski-Bove*, 300 AD2d 1122, 1123-1124 [2002]). The United States Supreme Court and the New York Court of Appeals have recognized the unique circumstances involved in testing a suspect's blood for alcohol given the fact that the evidence rapidly metabolizes with the passage of time (*see Schmerber v California*, 384 US 757, 770-771 [1966]; *see generally People v Kates*, 53 NY2d 591, 594-595 [1981]). As the Supreme Court wrote in *Schmerber*:

> "[T]he percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest" (384 US at 770-771).

Exigent circumstances were similarly present in this case. The accident occurred shortly before midnight, the police arrived sometime after midnight, and emergency personnel took some time in attempting to stabilize defendant at the scene. Defendant was first transported to a hospital in Jamestown, and was then taken to a hospital in Pennsylvania. Thus, by the time Deputy Forsberg drove to the Pennsylvania hospital and requested a blood draw, any evidence of intoxication was rapidly deteriorating. Under those circumstances, Deputy Forsberg was not required to take the additional time to secure a warrant or a court order in Pennsylvania.

## Conclusion

Accordingly, inasmuch as defendant's blood was drawn at the direction of a police officer who possessed probable cause to believe that defendant had operated a motor vehicle under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 and the blood sample was obtained pursuant to the procedures set forth in section 1194, we conclude that the court erred in granting the motion of defendant to suppress the results of the blood draw and that the order insofar as appealed from should be reversed, defendant's suppression motion denied, and the matter remitted to County Court for further proceedings on the indictment.

HURLBUTT, J.P., CENTRA, FAHEY and GORSKI, JJ., concur.

It is hereby ordered that the order insofar as appealed from is unanimously reversed on the law, the suppression motion is denied, and the matter is remitted to Chautauqua County Court for further proceedings on the indictment.