OPINION OF THE COURT
Gerri Pickett, J.
Defendant’s motion to suppress his arrest is denied. The initial stop was lawful, and when the officer observed the classic signs of intoxication, probable cause existed for defendant’s arrest. Since defendant was given clear and unequivocal refusal warnings, evidence of his refusal is admissible at trial.
Procedural Background
On May 23, 2010, an information was filed against defendant, Denys Popko, accusing him of operating a motor vehicle while under the influence of alcohol, among other Vehicle and Traffic Law violations. The complaint alleges that on or about May 23, *279 2010 at approximately 4:10 a.m. at Emmons Avenue and Coyle Street, County of Kings, State of New York, defendant was observed driving a 2000 Infiniti at a high rate of speed, swerving in and out of traffic, and changing lanes without signaling. The complaint further alleges that the defendant exhibited the classic signs of intoxication. The defendant claiming an unlawful vehicle stop moves to suppress his arrest and evidence of his refusal to take the chemical test.
On April 26, 2011, the court held a combined Ingle and refusal hearing to determine whether there was an “articulable basis” for the stop of defendant’s vehicle pursuant to People v Ingle (36 NY2d 413 [1975]), and whether the failure to offer the chemical test within two hours should result in suppression of evidence of defendant’s refusal.
The People called two witnesses: New York City Police Officer Ahmed Kahn, shield No. 2341, 61st Precinct, and Police Officer George Tsoukaris, shield No. 10743, Highway 2 Command, Brooklyn, New York. The defendant called no witnesses.
Testimony of Witnesses
1. Officer Kahn
Officer Kahn has been a member of the New York City Police Department for 5V2 years. For over four years he has been with the 61st Precinct and was previously with the 70th Precinct. He testified that during the course of his career, he has made over 30 arrests for driving while intoxicated. In addition to his professional experience, he has observed individuals in social settings consume alcoholic beverages and become intoxicated.
On the morning of May 23, 2010, he was working with his partner, Officer Dasir.* They were parked in a marked vehicle at the corner of Coyle Street and Emmons Avenue. At approximately 4:10 am., he testified that he observed an individual whom he described as the defendant driving a gray Infiniti sedan on the westbound side of Emmons Avenue traveling past him at a high rate of speed. The officer testified that the vehicle was traveling at approximately 45 miles per hour in a posted speed zone of 30 miles per hour. He testified that he was driving approximately one car length behind the defendant’s vehicle and used his speedometer to determine the defendant’s speed. He testified that he followed the defendant’s car for approximately eight blocks. The officer also testified that he *280 observed defendant’s vehicle, approximately four or five times, swerving into the right lane from the left lane. The officer then testified that after activating his lights and siren, he pulled the vehicle over on East 29th Street and Emmons Avenue.
After pulling the vehicle over, the officer testified that he approached the vehicle at approximately one foot on the driver’s side window and asked the defendant for his license, insurance and registration. At this point, the officer testified that using his flashlight for additional lighting, he observed the defendant had bloodshot, red watery eyes, slurred speech and the smell of alcohol on his breath. The officer testified that based on these observations, he asked the defendant to step out of the vehicle and take a field test. The officer testified that when the defendant exited his vehicle, he observed an unsteady balance, and at that point, he determined that the defendant was intoxicated. The officer testified that he asked the defendant to take a breath test. When the defendant refused, he placed him under arrest at 4:22 a.m. and transported him to the 61st Precinct for an Intoxicated Driver Testing Unit (IDTU) test. Officer Kahn then testified that at the IDTU defendant refused the test.
2. Officer Tsoukaris
Officer Tsoukaris is presently assigned to Highway 2 Command Unit. On May 23, 2010, he was assigned to Highway 2 Patrol Unit. His duties included patrolling the Borough of Brooklyn, handling accidents and performing IDTU testing. The officer testified that on May 23, 2010, he was the IDTU technician at the 78th Precinct. The officer testified that before being qualified as an IDTU technician, he completed approximately one week of classroom training including a course with the New York City Police Department, and he has been a breathalyzer operator for approximately 10 years. At approximately 7:00 a.m., he received a request to test the defendant’s blood alcohol level.
To enable the defendant, who spoke Russian, to understand the testing process, Officer Tsoukaris testified that he played a DVD recording of Russian interpretation with English subtitles. The officer testified that the defendant refused to take the test, was twice given refusal warnings in Russian via the tape recording and twice refused to take the test. The officer testified that the defendant was not offered the coordination test because those tests are not offered to persons with a language barrier. The officer further testified that after observing the defendant and based on his professional opinion, he thought the defendant *281 was intoxicated. At this point, the court reviewed the IDTU tape.
Defendant’s Argument
Defense counsel presents the following arguments: (1) the chemical test was not administered within two hours as required by Vehicle and Traffic Law § 1194 (1); (2) defendant was unable to voluntarily consent because of the language barrier (see People v Atkins, 85 NY2d 1007, 1008-1009 [1995]); (3) People v Brol (81 AD2d 739, 740 [4th Dept 1981]) is on point here because the test in that case was offered and refused after two hours; (4) there can be no inference of consciousness of guilt because the refusal is due to a language barrier; and (5) the IDTU tape does not show that the defendant was intoxicated, and as a result, he was not given a coordination test.
People’s Argument
The People counter argue as follows: (1) when the officer observed the defendant speeding and swerving lanes, he had probable cause to stop the vehicle; (2) the refusal warnings were played twice by videotape in Russian; (3) the defendant indicated he understood them and declined to take the test; (4) the coordination test was not offered because of the language barrier; (5) further, the chemical tests, and not the coordination tests, are admissible to show consciousness of guilt; (6) evidence of the refusal should be admitted as defendant’s consciousness of guilt; and (7) the two-hour rule is an issue for Department of Motor Vehicles when deciding to revoke a defendant’s license, and may only be applicable in criminal court proceedings in cases involving implied consent.
Conclusions and Rule of Law
At a suppression hearing, the People have the initial burden of presenting evidence of probable or reasonable cause to show the legality of police conduct (see People Baldwin, 25 NY2d 66 [1969]; People v Malinsky, 15 NY2d 86 [1965]; People v Wise, 46 NY2d 321 [1978]; People Dodt, 61 NY2d 408 [1984]; People v Moses, 32 AD3d 866 [2d Dept 2006], lv denied 7 NY3d 927 [2006]). Once the People have met this burden, it is the defendant that bears the burden of proving the illegality of police conduct (People v Berrios, 28 NY2d 361 [1971]; People v Di Stefano, 38 NY2d 640 [1976]; People v Lombardi, 18 AD2d 177 [2d Dept 1963]).
*282 1. Probable Cause to Arrest
Reasonable cause to stop the vehicle was established when the officer observed the defendant violate the Vehicle and Traffic Law by speeding and swerving in and out of his traffic lane, which had the potential to endanger the lives of pedestrians and motorists {see People v Ingle, 36 NY2d 413 [1975]; People v Robinson, 97 NY2d 341 [2001]). Immediately after stopping the vehicle, when the officer spoke with the defendant, he observed the classic signs of intoxication, such as bloodshot watery eyes, slurred speech, the strong smell of alcohol on the breath and an unsteady balance. That observation, coupled with the defendant’s erratic and unsafe driving, gave the officer probable cause to arrest the defendant for operating a motor vehicle while under the influence of alcohol {see People v Goodell, 164 AD2d 321, 323-324 [4th Dept 1990]). Accordingly, defendant’s arrest was lawful, and the Ingle motion is denied.
2. The Two-Hour Rule
A. Consent to be Tested
Implied Consent
Every motorist in New York State gives implied consent to be tested by a police officer in order to determine the alcohol content of the blood, provided the test is administered within two hours of an arrest or a positive breath test, whichever is later {see People v Zawacki, 244 AD2d 954 [4th Dept 1997]; Vehicle and Traffic Law § 1194 [2] [a] [1], [2]). This law is known as “the two-hour rule” {see Vehicle and Traffic Law § 1194 [2] [a] [1]).
In 1941, the two-hour rule was codified by the Legislature in the predecessor statute to Vehicle and Traffic Law § 1194 (2) and in the New York State Department of Health Regulations (former 10 NYCRR 59.2 [c] [2]). The law was passed because scientific research showed that alcohol metabolizes quickly in the body, and it was thought at the time that a two-hour limitation, as far as possible, would ensure that the results of the blood test maintained probative value as evidence of the defendant’s blood alcohol level at the time of the operation of the vehicle {see Mem of Assemblyman Peterson [Assembly Sponsor] in Support, Bill Jacket, L 1941, ch 726). From a scientific viewpoint, the longer it takes to test the defendant, the less reliable the results are as evidentiary proof of intoxication while the defendant was operating the vehicle {see People v Victory, 166 Misc 2d 549, 556 [Crim Ct, Kings County 1995]).
*283 Actual Consent
Given the fact that consent is implied within two hours of an arrest, if more than two hours pass after an arrest, the defendant is no longer “deemed to have given consent” to be tested. In 1995, the Court of Appeals held that where a defendant “expressly and voluntarily” consents to be tested after two hours, the results are deemed competent evidence and will be admissible at trial (see People v Atkins, 85 NY2d 1007, 1008-1009 [1995]).
B. Refusal to be Tested
Within Two Hours
If the driver refuses to be tested within two hours, then evidence of the refusal is admissible against the driver at trial, as a “consciousness of guilt,” “but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal” (see Vehicle and Traffic Law § 1194 [2] [Q; People v Thomas, 46 NY2d 100, 108 [1978]; People v Delia, 105 Misc 2d 483 [Onondaga County Ct 1980]; People v Cruz, 134 Misc 2d 115 [Crim Ct, NY County 1986]; People v Walsh, 139 Misc 2d 161 [Nassau Dist Ct 1988]; see also People v Ferrara, 158 Misc 2d 671 [Crim Ct, Richmond County 1993]).
After Two Hours
In 1981, the Fourth Department ruled that evidence of a refusal made after two hours is incompetent evidence at trial based on the fact that alcohol metabolizes quickly in the blood and the longer it takes to obtain the test results the less likely the evidence will be scientifically accurate (see People v Brol, 81 AD2d 739, 740 [1981]). In 1995, the Court of Appeals in People v Atkins (85 NY2d 1007 [1995]) appeared to have overruled Brol on the point of the admissibility of evidence obtained after two hours. The Atkins Court held that where a defendant “expressly and voluntarily” consents to be tested, the results are reliable evidence and admissible at trial, even if the test is conducted more than two hours after the defendant consented to take it (id. at 1008-1009). In reaching its conclusion, the Atkins Court rejected the argument that the two-hour time limit is “an absolute rule of relevance, proscribing admission of the results of any chemical test administered after that period regardless of the nature of the driver’s consent” (id. at 1009). The Court went on to say that this argument is undermined by the lack of a corresponding time limit for court-ordered tests *284 under Vehicle and Traffic Law § 1194 (3) or by a physician of the operator’s own choosing under Vehicle and Traffic Law § 1194 (4) (b). Thus, the Court unequivocally held that “the two-hour limitation contained in Vehicle and Traffic Law § 1194 (2) (a) has no application here where [a] defendant expressly and voluntarily consented to administration of the blood test.” {Id. at 1009.)
What the Atkins Court did not answer is whether the two-hour rule is applicable to refusals given after the two-hour statutory limitation. However, the Brol Court seemed to have answered this question in an obscure way. In Brol, before the Court was the issue of the competency of the evidence. The appellate court held that “[ujnless the test is taken within the two-hour time limit . . . the results are not competent evidence and may not be received in evidence against the operator, [and the] operator’s refusal to take the test is also admissible in court against him” {Brol at 740). The appellate court went on to say that “[b]ut if the test’s results are incompetent if the test is not administered within the two-hour limit, evidence of the refusal is similarly incompetent evidence against defendant unless obtained within two hours of the arrest.” {Brol at 740 [emphasis added].)
Whether on purpose or inadvertently, the Brol Court placed a precondition on the admissibility of evidence and that precondition was overruled by Atkins. Since the Brol Court based its decision on the competency of the test results and refusals that were based on the same incompetent tests, the Brol decision is no longer the law on this point. The Court of Appeals in Atkins clearly eliminated this precondition when it held test results obtained after the two-hour limit are indeed competent, reliable and probative evidence and may be received in evidence at trial against a defendant even if the defendant consented to the test after two hours.
Thus, in following the Brol decision to its logical conclusion, it follows then that if the test’s results are competent if the test is administered after the two-hour limit, as Atkins has ruled, then evidence of the refusal is likewise competent evidence against the defendant even if the refusal was obtained two hours after the arrest. Therefore, in adhering to the law established by the Court of Appeals in People v Atkins, this court finds that the defendant’s refusal in this case is admissible at trial although it was given more than two hours after the arrest. Accordingly, defendant’s motion to suppress his refusal to take the chemical test is denied.
*285 3. Defendant’s Failure to Consent Due to a Language Barrier
Defense counsel’s argument that the defendant was unable to voluntarily consent because of the language barrier is without merit. At no point during the videotape of the instructions did the defendant indicate an inability to comprehend what was being said. As reflected in the videotape that was reviewed by the court, the officer clearly states on the tape that the defendant told him he understood a little bit of English. In response to the defendant’s request for a translator, the officer played a Russian translation tape with English subtitles. The tape contained both the offer to be tested and the refusal warnings. At the hearing Officer Tsoukaris testified that it is standard procedure to play a videotape in whatever language a defendant speaks. At the same time, the officer testified that since the coordination test is administered verbally by the officer, it is not performed in situations where there is a language issue involving verbal commands. Here, it would have made no sense for the officer to administer a verbal coordination test. The court further observed from reviewing the videotape that after the tape was played, the defendant responded to the officer in English.
The court further finds that defendant’s facial expression and body language did not depict a person who did not understand or comprehend his choices or was confused, nor did the defendant look at the officer for understanding of what he had just heard. Based on the record in this case, the court finds that there was no evidence which indicated that the defendant was deprived of his due process right on the ground that he did not understand the videotape. Therefore, the branch of defendant’s motion seeking suppression of his refusal on the ground that he did not understand the videotape is denied.
4. Lack of Consciousness of Guilt
Defense counsel’s argument that the defendant was unable to consent because of his language barrier and not as the result of a “consciousness of guilt” is without merit. As the court previously found, there is no evidence that the refusal to take the chemical test was based on a language barrier.
Conclusion
Pursuant to the facts of this case and applicable case law, the court finds that there was both reasonable suspicion and probable cause to stop defendant’s vehicle according to People v *286 Ingle and People v Robinson, when the officer observed a violation of the Vehicle and Traffic Law, and when the officer observed the classic signs of intoxication that established probable cause to arrest the defendant. Since the defendant was given sufficient refusal warnings in clear and unequivocal language in his native Russian language, evidence of the refusal is admissible at trial even though the test was offered after two hours and defendant refused to take the test after two hours. For the reasons set forth above, defendant’s suppression motion is denied in its entirety.

 Phonetic spelling.