IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,286

STATE OF KANSAS,
*Appellee*,

v.

KYLE ALAN CHAVEZ-MAJORS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Unsafe driving and the odor of alcohol can each suggest a person was driving while legally impaired and contribute to a finding of probable cause.

2.

*Schmerber v. California*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) established a three-prong test for fitting a warrantless blood draw into the probable cause plus exigent circumstances exception to the warrant requirement: (1) there must be exigent circumstances that justify the taking of the blood sample; (2) there must be probable cause to believe the defendant has been driving while legally impaired; and (3) the procedure used to extract blood must be reasonable.

3.

The natural dissipation of alcohol in the blood does not establish exigency per se.

Review of the judgment of the Court of Appeals in 54 Kan. App. 2d 543, 402 P.3d 1168 (2017). Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed December 20, 2019. Judgment of the Court of Appeals affirming the district court on the issue subject to review is affirmed in part and the case is remanded to the district court with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Brett D. Sweeney,* assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Kyle Chavez-Majors was convicted of aggravated battery while driving under the influence of alcohol after the district court denied his motion to suppress evidence obtained from a warrantless blood draw. The Court of Appeals reversed the conviction based on a violation of the right to jury trial but affirmed the district court's denial of the motion to suppress. Chavez-Majors challenges the portion of the panel's decision affirming the denial of the motion to suppress.

FACTS

On May 24, 2014, at approximately 9:22 p.m., Wildlife and Parks Ranger Tyler Burt received a call regarding a motorcycle accident in a parking lot in El Dorado State Park. When Burt arrived, there were 15 to 20 people and numerous alcoholic containers throughout the parking lot. Burt observed a motorcycle on its side and two people who appeared to be injured. Burt first checked on Jenilee Christy. She was sitting up and talking and had lacerations on one of her legs. After asking Christy if she was okay, Burt

2

turned his attention to the other injured individual—Chavez-Majors—who was lying on the ground. Chavez-Majors was nonresponsive and appeared to have suffered a head wound, resulting in blood-soaked hair. Burt leaned close to Chavez-Majors and while checking for signs of breathing smelled a strong odor of alcohol on his breath. After confirming that Chavez-Majors was breathing, Burt remained with him until emergency medical services (EMS) personnel arrived.

When EMS arrived, Burt had them attend to Chavez-Majors and went to speak with Isaiah McElhone, who had witnessed the accident. McElhone told Officer Burt that Chavez-Majors had been driving the motorcycle at a high rate of speed down a road that led into the parking lot when he lost control, fell off the motorcycle, which then slid into Christy in the parking lot.

At some point after EMS arrived, Burt read an implied consent form to the unconscious Chavez-Majors and then directed EMS personnel to draw Chavez-Majors' blood. The blood sample eventually revealed that Chavez-Majors had a blood alcohol level of .14.

Chavez-Majors was charged with aggravated battery while driving under the influence; driving while license canceled, suspended, or revoked; no proof of liability insurance; and illegal registration.

Chavez-Majors moved to suppress the results of the blood test, arguing that the blood draw was an unreasonable search under the Fourth Amendment to the United States Constitution. At a hearing on the motion, Burt testified about the events surrounding the blood draw. He explained that he was familiar with the parking lot where the accident occurred and that it was typically referred to as the "party cove." Burt

3

testified that "a lot of people go there and party and consume alcohol and just . . . enjoy the lake." Burt described the parking lot as 150 feet wide by 50 feet deep. He explained that one paved road with a speed limit of 45 leads up to the parking lot, curves to the right, and then dead-ends in the parking lot.

Burt estimated that it took him 10 minutes to arrive on the scene after receiving a call about the accident. There were no other officers at the scene when he arrived. Based on skid marks that he observed on the road, Burt stated that it appeared the motorcycle had been traveling at a high rate of speed when it ran off of the road to the left, traveled a short distance, and then fell on its side and skidded across the parking lot. Burt testified that he believed Chavez-Majors had serious head injuries and was in critical condition. At some point after EMS arrived, Burt learned that Chavez-Majors was going to be transported by ambulance to a hospital in Wichita. He understood that EMS personnel considered Chavez-Majors' injuries too serious for the local hospital.

Burt testified that he requested EMS perform a blood draw because he believed Chavez-Majors had been driving under the influence of alcohol. He based this belief on the accident, Chavez-Majors' high rate of speed, and the strong odor of alcohol coming from Chavez-Majors' breath. On cross-examination, Officer Burt admitted that it is possible for someone with a strong odor of alcohol on his or her breath to be only minimally intoxicated and for someone with very little odor of alcohol on his or her breath to be heavily intoxicated. He also confirmed that many traffic accidents do not involve alcohol.

On direct examination, the State asked Burt if he had access to "iPads or any other electronic device" that he could have used to "contact a local judge to obtain a warrant with." Burt said he did not. He also confirmed that he did not have a DUI template or

something that was "already worked up for a situation like this." Although Burt had been a park ranger for five years, he agreed that neither he nor anyone else in his department had "done anything like that before." Burt estimated that, given all of his other responsibilities that night, it would have taken him an hour and a half to two hours to "write up a warrant." Burt further testified that he was the only law enforcement officer present on the scene until about 15 to 20 minutes after he had arrived. The other officers arrived after Burt had requested that EMS draw Chavez-Majors' blood. On that evening, there had been only one other officer patrolling the park, and he had been attending to a different call at the time Burt responded to the accident.

Burt confirmed that, "[a]s a park ranger," he was "a law enforcement officer in every other way" and had completed "the training program at the academy" where he was taught how to obtain warrants. Burt testified that, although his office did not routinely obtain warrants, it would have been possible to seek assistance from law enforcement officers at the El Dorado Police Department in doing so. Burt acknowledged that he made no attempt to seek assistance in obtaining a warrant, did not contact a supervisor about obtaining a warrant, and did not consider the possibility that he might have needed a warrant. Burt stated that he had no reason for not obtaining a warrant; he just did not do so. On re-direct, Burt testified that he understood he had to draw blood from Chavez-Majors within three hours of the accident to obtain "valid" results. He went on to state that it would have been possible to get a warrant within three hours of the accident but he could not be "100 percent sure" he would have been able do to so.

McElhone also testified at the hearing. He stated that he had been with Christy and two of their friends in the parking lot on the evening of the accident. He did not know Chavez-Majors but had seen him in the parking lot that evening and observed him pick up a beer a few times. McElhone testified that he watched Chavez-Majors drive his

motorcycle at a high rate of speed—25 to 30 miles per hour—down the road towards the parking lot and asked someone if Chavez-Majors should have been driving the motorcycle. McElhone was concerned he was intoxicated based on how fast Chavez-Majors was driving. Whoever McElhone questioned replied that Chavez-Majors was "fine." When Chavez-Majors got close to the parking lot, the motorcycle fell to its side, Chavez-Majors fell off of it, and the motorcycle slid through the parking lot. The motorcycle slid past McElhone and into Christy, pinning her underneath a truck. McElhone testified that he believed Chavez-Majors lost control of the motorcycle because he was driving it too fast. He further testified that he had not considered Chavez-Majors too intoxicated to be driving the motorcycle.

The district court denied the motion to suppress after concluding that the warrantless search was reasonable under the probable cause plus exigent circumstances exception to the warrant requirement.

The State agreed to dismiss all charges except aggravated battery while driving under the influence in exchange for Chavez-Majors' agreement to proceed to a bench trial on stipulated facts. At the bench trial, the court acknowledged this agreement from the bench. The court never informed Chavez-Majors of his right to a jury trial and Chavez-Majors did not explicitly waive that right. Nonetheless, the trial continued. The court confirmed that Chavez-Majors agreed with the stipulated facts and then found Chavez-Majors guilty of aggravated battery while driving under the influence. The court sentenced Chavez-Majors to 57 months in prison.

Chavez-Majors appealed. He argued that his conviction should be reversed because he did not waive his right to a jury trial and because the district court erred in denying his motion to suppress. The Court of Appeals agreed that Chavez-Majors had not

knowingly and voluntarily waived his right to a jury trial and reversed and remanded for a new trial or an effective waiver. *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 552, 402 P.3d 1168 (2017). The Court of Appeals affirmed the district court's decision denying the motion to suppress. *Chavez-Majors*, 54 Kan. App. 2d at 570.

Chavez-Majors petitioned for this court's review of the portion of the Court of Appeals decision affirming the district court's denial of the motion to suppress. The State cross-petitioned for review of the portion of the Court of Appeals opinion holding that Chavez-Majors did not waive his right to jury trial and reversing and remanding the case. We granted Chavez-Majors' petition for review and denied the State's cross-petition for review.

ANALYSIS

Chavez-Majors argues that the warrantless blood draw violated his right to be free from unreasonable searches under the United States and Kansas Constitutions and, consequently, the Court of Appeals erred when it affirmed the district court's denial of his motion to suppress the results of that blood draw.

When considering a district court's ruling on a motion to suppress evidence, we review the district court's factual findings to determine whether they are supported by substantial competent evidence. We review the ultimate legal conclusions based on those findings de novo. *State v. Palacio*, 309 Kan. 1075, 1081, 442 P.3d 466 (2019) (citing *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 [2016]). Chavez-Majors contests only the court's legal conclusions.

7

Under the Fourth Amendment, people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This provision, applicable to the States through the Fourteenth Amendment, prohibits federal and state actors from performing unreasonable searches or seizures. *Mapp v. Ohio*, 367 U.S. 643, 647, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (Fourth Amendment limits action of federal officials and applies to states via Fourteenth Amendment).

The Kansas Constitution Bill of Rights also includes a prohibition against unreasonable searches and seizures. Section 15 provides that "[t]he right of people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate . . . ." We have interpreted this section to offer protections identical to the Fourth Amendment. *State v. Howard*, 305 Kan. 984, 989, 389 P.3d 1280 (2017).

A search or seizure that is performed without a warrant is always unreasonable unless it fits within one of the following exceptions: "'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" *Howard*, 305 Kan. at 989 (quoting *State v. Richard*, 300 Kan. 715, 726-27, 333 P.3d 179 [2014]). If the warrantless search or seizure does not fit within one of these exceptions, any evidence it reveals is inadmissible and must be suppressed. *Howard*, 305 Kan. at 989. It is the State's burden to show that a challenged search was reasonable. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S. Ct. 1969, 26 L. Ed. 2d 409 (1970); *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015); K.S.A. 22-3216. A blood draw is a "search" under the Fourth Amendment. *Missouri v. McNeely*, 569 U.S. 141, 148, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).

In *Schmerber v. California*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the United States Supreme Court held that a warrantless blood draw was reasonable under the exigent circumstances plus probable cause exception. There, a police officer smelled liquor on a driver's breath at the scene of an accident and observed other signs of drunkenness. The blood draw that the officer ordered at the hospital was reasonable in that case because "[t]he officer . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Schmerber*, 384 U.S. at 770 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777 [1964]). The Court also found that the testing procedures had been reasonable.

Courts, including this one, have interpreted *Schmerber* to establish a three-prong test for considering whether a warrantless blood draw fit within the probable cause plus exigent circumstances exception to the warrant requirement:  (1) there must be exigent circumstances which justify the taking of the blood sample; (2) there must be probable cause to believe the defendant had been driving while legally impaired; and (3) the procedure used to extract blood must be reasonable. *State v. Murry*, 271 Kan. 223, 233, 21 P.3d 528 (2001). Although the officer in *Schmerber* had arrested the driver of the car before performing the search, courts have concluded that *Schmerber* does not require arrest as a fourth prong. See *Murry*, 271 Kan. at 233 (citing other jurisdictions to support conclusion that *Schmerber* does not require arrest prior to taking blood sample). Similarly, arrest alone does not make a blood draw reasonable. *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2184, 195 L. Ed. 2d 560 (2016) (search incident to arrest exception does not allow for warrantless blood draw).

Here, the district court concluded that the warrantless blood draw performed on Chavez-Majors was reasonable because it met this three-prong test. The Court of Appeals

9

agreed. *Chavez-Majors*, 54 Kan. App. 2d at 569. Chavez-Majors does not contest the court's factual findings and he concedes that the procedure was reasonable, but he argues that both courts made a legal error when they concluded that probable cause and exigent circumstances existed. We address each in of those in turn.

*Probable Cause*

To satisfy this element, the State had to establish that Burt had probable cause to believe that Chavez-Majors had been driving his vehicle while the alcohol concentration in his blood was .08 or more. K.S.A. 2013 Supp. 8-1567.

> "'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
>
> "'When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018) (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 [2004]).

The district court made the following findings regarding probable cause:

> "In this instance the officer would have had available, based on the evidence, the following information: that the—the defendant in this case was operating his motorcycle at a high rate of speed for a parking lot, 25 to 30 miles per hour, which at least suggests to the Court impaired judgment; No. 2, that the defendant's driving behavior resulted in a

10

motorcycle hitting a pedestrian which resulted in serious injury to such pedestrian and to the defendant. The officer would have also had the information that he had detected the strong smell consistent with alcoholic beverage on the breath of the defendant. And the officer also would have known that the particular place where this incident took place was known as a party cove with based on his experience which involved alcohol drinking parties and was busy with alcohol partiers in this very area on that very day."

Based on these findings, the district court concluded that the officer had probable cause to support a reasonable belief that Chavez-Majors had been driving while intoxicated beyond the legal limit.

The Court of Appeals agreed with this conclusion. *Chavez-Majors*, 54 Kan. App. 2d at 561-62. It highlighted the strong odor of alcohol on Chavez-Majors' breath, that the location where Officer Burt had been was well-known for groups of people drinking alcohol and "partying," that there were numerous people and containers of alcohol in the area when the officer arrived, and that Chavez-Majors had been driving at a high rate of speed into a parking lot before losing control of his vehicle. *Chavez-Majors*, 54 Kan. App. 2d at 561.

Chavez-Majors argues that the Court of Appeals placed too much emphasis on his high rate of speed as he entered the parking lot because "traffic infractions and poor decision-making do not necessarily mean intoxication." Chavez-Majors acknowledges the odor of alcohol on his breath but attempts to diminish its probative value by pointing out that Officer Burt testified that an odor of alcohol does not conclusively suggest a person is intoxicated. Chavez-Majors also emphasizes McElhone's testimony that he did not think that Chavez-Majors was too intoxicated to be operating a vehicle.

11

Chavez-Majors' attempt to discredit dangerous driving as a sign of intoxication is unconvincing. As the Court of Appeals noted, we have explained that "'unsafe driving can suggest intoxication.'" *Chavez-Majors*, 54 Kan. App. 2d at 561 (quoting *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 [2015]). Chavez-Majors drove his motorcycle at a high rate of speed into a parking lot where cars were parked and people were standing. This certainly shows significantly impaired judgment and supported a reasonable belief that Chavez-Majors was driving while legally impaired.

Chavez-Majors' minimization of the strong odor of alcohol on his breath is equally unmoving. Our caselaw makes it clear that the odor of alcohol suggests intoxication. See, e.g., *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013) (smell of alcohol contributed to probable cause finding); *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 518, 242 P.3d 1179 (2010) (same); *City of Dodge City v. Hadley*, 262 Kan. 234, 246, 936 P.2d 1347 (1997) (same). Although Chavez-Majors is correct—a person can smell like alcohol without being too intoxicated to legally drive, we have never held that a factor must definitively show intoxication to support a finding of probable cause.

Finally, Chavez-Majors' insistence that McElhone's testimony undermines any suspicion of intoxication is without merit. This testimony has little relevance to the probable cause analysis. Whether the officer had probable cause depends on "'the facts and circumstances within the arresting officers' knowledge.'" *Ramirez*, 278 Kan. at 406. Nothing in the record suggests that McElhone told Burt that he did not believe Chavez-Majors was too intoxicated to be operating the motorcycle.

Combined, the factors in this case supported probable cause. Chavez-Majors was driving at a high rate of speed around a curve and into a parking lot that he knew held parked cars and where people were congregated. When Burt arrived on the scene shortly

12

thereafter, he smelled a strong odor of alcohol on Chavez-Majors' breath. These factors justified a reasonable belief that Chavez-Majors was driving while legally impaired. See *United States v. Berry*, 866 F.2d 887, 891 (6th Cir. 1989) (officer had probable cause to believe defendant had been driving while intoxicated when officer "was aware that the suspect was involved in a serious and inexplicable single car accident" and Berry's breath smelled of alcohol); *State v. Oevering*, 268 N.W.2d 68, 74 (Minn. 1978) (probable cause when defendant caused fatal traffic accident and smelled of alcohol); *People v. LeRow*, 70 A.D.3d 66, 71, 889 N.Y.S.2d 813 (2009) (officer had probable cause when defendant had been driving motorcycle at a high right of speed before crossing center line, entering a yard, and hitting a large rock and defendant smelled like alcohol); *State v. Hollingsworth*, 77 N.C. App. 36, 44, 334 S.E.2d 463 (1985) (probable cause when defendant's car smelled of alcohol and defendant caused traffic accident by miscalculating distance between his car and another and was unable to prevent high-speed cross over median).

We affirm the district court's and the Court of Appeals' conclusions regarding probable cause.

*Exigent Circumstances*

Although we have concluded that probable cause existed, the warrantless blood draw survives Chavez-Majors' challenge only if exigent circumstances also were present.

The leading case on exigent circumstances is *Schmerber v. California*, 384 U.S. 757. There, the United States Supreme Court described exigent circumstances as those which would cause an officer to "reasonably [] believe that [the officer] was confronted with an emergency, in which the delay necessary to obtain a warrant . . . threatened 'the

destruction of evidence.'" *Schmerber*, 384 U.S. at 770 (quoting *Preston*, 376 U.S. at 367). Following *Schmerber*, in *Missouri v. McNeely*, 569 U.S. 141, 156, 133 S. Ct. 1552, 185 L. Ed 2d 696 (2013), the Court held that "the natural dissipation of alcohol in the blood" does not establish exigency per se. The Court confirmed this holding three years later in *Birchfield*. 136 S. Ct. at 2174 (acknowledging that "the natural dissipation of alcohol from the bloodstream does not always constitute an exigency justifying the warrantless taking of a blood sample").

Relying on these cases, the district court here found that exigent circumstances existed in this case because of Chavez-Majors' "significant[] injur[y] . . . , evidence that his head was bleeding profusely at the time . . . , [the] apparent need for immediate medical care on an emergency basis and the likely need for evacuation of at least two individuals . . . , [and], though not determinative in and of itself, the limited resources that were immediately available to the officer on this occasion . . . ." The Court of Appeals affirmed this decision, based on the following facts:

> "the metabolization of alcohol in the defendant's bloodstream coupled with the exigent factors that the officer arrived at the accident scene 10 minutes after being dispatched; upon arrival he was the only officer available to attend to the seriously injured defendant and another injured person for 15 to 20 minutes while awaiting the arrival of emergency medical personnel; emergency medical personnel determined it was necessary to transport the defendant by ambulance a considerable distance to a hospital in another county for medical treatment; the officer conducted an investigation of the accident scene; and the officer testified that it would have taken 'a significant amount of time,' estimated at one and a half to two hours to prepare a search warrant . . . ." *Chavez-Majors*, 54 Kan. App. 2d at 569.

14

After the Court of Appeals ruled and Chavez-Majors submitted his petition for review to this court, the United States Supreme Court issued a decision regarding a warrantless blood draw from an unconscious driver. See *Mitchell v. Wisconsin*, 588 U.S. __, 139 S. Ct. 2525, 204 L. Ed. 2d 1040 (2019). In *Mitchell*, a plurality of the Supreme Court held:

> "When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment." *Mitchell*, 139 S. Ct. at 2539.

The plurality then addressed those situations when the warrantless blood draw may not be reasonable, noting:

> "We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Mitchell*, 139 S. Ct. at 2539.

Because Mitchell had not had "a chance to attempt to make that showing," the Court remanded the case for that purpose. *Mitchell*, 139 S. Ct. at 2539.

Like Mitchell, Chavez-Majors has not had a chance to fully litigate his claim under the change in law created by *Mitchell*. And neither of the lower courts had the advantage of *Mitchell* when making their rulings. Consequently, we will not review those

15

decisions. Instead, we remand this case to the district court for an evidentiary hearing and a ruling from the district court on exigency in light of *Mitchell*.

We affirm the Court of Appeals decision regarding probable cause and remand the case to the district court for a suppression hearing to consider, under the change in law created by *Mitchell*, whether exigent circumstances supported the warrantless blood draw, and for any other necessary proceedings under this court's and the Court of Appeals' ruling.

Affirmed in part and remanded with directions.

PATRICK D. MCANANY, Senior Judge, assigned.[1]

_____

[1]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No.115,286 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.