NOT DESIGNATED FOR PUBLICATION

No. 126,980

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN VEGA-RUIZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Ford District Court; ANDREW M. STEIN, judge. Submitted without oral argument. Opinion filed November 27, 2024. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before ATCHESON, P.J., HURST and PICKERING, JJ.


HURST, J.: Juan Vega-Ruiz appeals from the district court's denial of his motion to suppress evidence underlying his conviction for driving under the influence of alcohol in violation of the law. Vega-Ruiz argues that the State failed to prove the arresting deputy had sufficient objective facts to establish probable cause to arrest him for DUI. Contrary to this contention, there is substantial competent evidence supporting the district court's finding that the deputy had probable cause, under a totality of the circumstances, to arrest Vega-Ruiz for DUI. The district court's denial of the motion to suppress is affirmed.

1

In August 2020, the State charged Juan Vega-Ruiz with driving under the influence of alcohol in violation of K.S.A. 8-1567(a)(2) (DUI). The State alleges that on July 26, 2020, Vega-Ruiz tried to avoid a DUI check lane in an unsafe manner and subsequently demonstrated several indications of impairment. Vega-Ruiz moved to suppress the evidence underlying the DUI charge, arguing that law enforcement lacked probable cause to arrest him for DUI.

On November 5, 2021, the district court held an evidentiary hearing on the motion to suppress where it heard testimony from the arresting deputy and the police sergeant who claimed to have witnessed Vega-Ruiz avoid the DUI check lane. The police sergeant testified that on July 26, 2020, the Ford County Sheriff's office set up a DUI check lane in the 400 block of West Wyatt Earp Boulevard in Dodge City, Kansas. The sergeant testified that reflective cones were set up to funnel traffic into a single lane on each side of the road and that a sign notified drivers coming from either direction that they were approaching a DUI check lane. The sergeant was the greeter at the front of the westbound DUI check lane where he could see the oncoming traffic as it entered. The sergeant testified that at about 1:30 a.m., he saw a dark Honda traveling west at an apparent high rate of speed in the "number two" lane—the lane that no longer went through. The other westbound vehicles had already merged out of that lane and were lined up and waiting in the "number one" DUI check lane. The sergeant testified that the black Honda stopped 10 to 15 feet before the cones that were blocking the end of the lane. The sergeant testified that the vehicle began traveling in reverse, backing up 30 or 40 feet against the flow of traffic. As the vehicle reversed, it "veered northeast" and "almost [struck] two vehicles." Then, in the intersection of Wyatt Earp and Second Street, the Honda turned south onto Second Street and proceeded out of the exit lane. The sergeant stated that he notified a deputy that he saw a black Honda passenger car enter the DUI check lane, "almost striking the cones and . . . two vehicles as it was exiting."

2

The deputy testified that he saw a vehicle matching the Honda's description proceeding westbound on Trail Street about 15 or 20 seconds after receiving the sergeant's notification. The deputy caught up to the vehicle, which was driven by Vega-Ruiz, and initiated a traffic stop. According to the deputy, as he approached the vehicle, Vega-Ruiz backed into his patrol car: "the reverse lights of the vehicle came on, and the vehicle started to back up slowly, and it backed into the front of my push bumper on my patrol car."

Vega-Ruiz first claimed he had not had any alcohol to drink. As the deputy made contact, however, he smelled alcohol coming from Vega-Ruiz and noticed he had bloodshot eyes. The deputy testified that after explaining he could smell alcohol, Vega-Ruiz admitted to having "like, two" alcoholic beverages. Based on his observations, the deputy asked Vega-Ruiz to participate in standardized field sobriety testing. The deputy first asked Vega-Ruiz to perform the walk-and-turn test and testified that—after the deputy had instructed and demonstrated it—Vega-Ruiz exhibited four signs of impairment during the test. The deputy testified that Vega-Ruiz used his arms to balance, missed heel to toe, stopped while walking, and made an improper turn. The deputy then asked Vega-Ruiz to perform the one-leg-stand test and testified that Vega-Ruiz exhibited two signs of impairment by using his arms to balance and swaying.

Based on the totality of the circumstances—including the deputy's personal observations and the sergeant's observations of Vega-Ruiz' unsafe driving while trying to avoid the DUI check lane—the deputy arrested Vega-Ruiz for suspicion of DUI. After transporting Vega-Ruiz to the Ford County Jail, the deputy administered the Intoxilyzer 9000 test which indicated Vega-Ruiz had a blood-alcohol content of .128—more than the legal limit for driving a vehicle.

The district court denied the motion to suppress on November 10, 2021. The court concluded:

"Under a totality of the circumstances analysis, [Vega-Ruiz'] avoidance of the checkpoint, traffic maneuver where he nearly collided with other vehicles and backing his vehicle into [the deputy's] patrol vehicle all provide evidence of impairment. Coupled with the observations [the deputy] made during initial contact and field sobriety tests, [the deputy] had probable cause to arrest [Vega-Ruiz] for driving under the influence."

After a bench trial on stipulated facts on February 27, 2023, the district court convicted Vega-Ruiz of DUI. The district court imposed a 12-month jail sentence, suspended to 12 months of probation after serving 5 days in custody. The court also imposed a fine of $1,250.

Vega-Ruiz appeals from the district court's denial of the motion to suppress.

DISCUSSION

On appeal, Vega-Ruiz claims the district court erred in denying his motion to suppress because the court lacked objective facts to support finding that the deputy had probable cause to arrest him for DUI. Vega-Ruiz does not challenge the legality of the traffic stop or the sufficiency of the evidence—if not suppressed—supporting his conviction; he only challenges the probable cause supporting his arrest. Arguments not briefed on appeal are waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

This court reviews the district court's denial of a motion to suppress using a bifurcated standard, first determining whether the district court's factual findings are supported by substantial competent evidence, then reviewing the legal conclusion de novo. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). In this case, the facts

4

are generally uncontroverted, so the focus on appellate review is simply a question of law reviewed de novo—a look at the district court's legal conclusion anew. See *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

An officer may arrest someone without a warrant when the officer has probable cause to believe the person committed a crime as follows:

> "(c) The officer has probable cause to believe that the person is committing or has committed:
> (1) A felony; or
> (2) a misdemeanor, and the law enforcement officer has probable cause to believe that:
> (A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;
> (B) the person may cause injury to self or others or damage to property unless immediately arrested; or
> (C) the person has intentionally inflicted bodily harm to another person.
> "(d) Any crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view." K.S.A. 22-2401(c), (d).

Probable cause is an officer's reasonable belief that the defendant committed a specific crime. A court must consider "'the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt'" to determine whether the officer possessed probable cause for the arrest. *State v. Chavez-Majors*, 310 Kan. 1048, 1055, 454 P.3d 600 (2019). To determine whether the deputy had probable cause to arrest Vega-Ruiz for DUI, this court must review the totality of the circumstances and information available to the deputy at the time of the arrest.

5

The district court found the following facts supported the deputy's probable cause to arrest Vega-Ruiz for DUI:

- The sergeant reported to the deputy that Vega-Ruiz drove in an unsafe manner, likely violating traffic laws, to avoid the sobriety check point.
- The deputy saw Vega-Ruiz put the car into reverse and back into his patrol car bumper.
- After contacting Vega-Ruiz, the deputy noticed the odor of alcohol on Vega-Ruiz' person.
- After initially denying having consumed any alcoholic beverages, Vega-Ruiz admitted to the deputy that he had about two alcoholic drinks.
- The deputy noticed that Vega-Ruiz had bloodshot eyes.
- While administering field sobriety tests, the deputy observed Vega-Ruiz show four clues of impairment on the walk-and-turn test and two clues of impairment on the one-leg-stand test.

Although Vega-Ruiz does not challenge most of these findings, he argues that the district court should not have relied on the results of the field sobriety tests because the deputy could not recall the specifics of Vega-Ruiz' performance. The deputy testified at the time of the hearing that he did not independently remember how Vega-Ruiz performed on some of the field sobriety tests and based much of his testimony on his contemporaneous written arrest report. Although the deputy explained what behaviors generally established an impairment clue on each of the tests, he could not recall exactly how Vega-Ruiz demonstrated each impairment clue.

Vega-Ruiz does not challenge the accuracy of the deputy's written report; rather he appears to allege that the clues of impairment could be such minor deviations that an independent reviewer might disagree. Vega-Ruiz contends that because the deputy could

6

not recall the exact movements that resulted in him reporting that Vega-Ruiz demonstrated clues of impairment, the deputy's testimony is insufficient to support a finding of probable cause for the arrest. See *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 442 P.3d 1038 (2019) (upholding the district court's determination that the arresting officer lacked probable cause to arrest the defendant for DUI when the court disagreed with the arresting officer's field sobriety test results). For example, the deputy did not recall what Vega-Ruiz did to improperly turn on the walk-and-turn test and agreed that some errors on the turn would give greater indication of impairment than others—such as losing balance while turning versus not following directions to turn using a series of small steps.

In *Casper*, which Vega-Ruiz contends supports his claims, the district court determined that the arresting officer lacked reasonable grounds to believe the defendant was operating a vehicle under the influence of alcohol in violation of the law. The Court of Appeals disagreed with the district court and found substantial competent evidence of a "strong odor" of alcohol supporting the arrest by relying on a recording where the arresting officer can be heard telling Casper you "reek of alcohol." *Casper v. Kansas Dept. of Revenue*, No. 115,352, 2016 WL 6024622, at *3 (Kan. App. 2016) (unpublished opinion). The Supreme Court disagreed with the Court of Appeals and explained that the officer's statement was not presented to the district court as evidence of Casper's alcohol consumption—the district court had only the officer's testimony that he smelled "some odor" of alcohol on Casper. *Casper*, 309 Kan. at 1217. Moreover, the district court had considered Casper's testimony in which she explained her activities of the day and stated that that she did not smell of alcohol. The Supreme Court explained that, contrary to the Court of Appeals' apparent finding, the district court had considered the totality of the circumstances—including testimony from the defendant and arresting officer as well as the video recordings—and the Court of Appeals improperly reweighed and reassessed the district court's credibility determination. 309 Kan. at 1216-17, 1221. In *Casper*, the district court reviewed the field sobriety tests and disagreed with the officer's conclusion

that Casper failed. The Supreme Court explained the reason for the district court's conclusion:

> "The [district] court determined that [the officer's] instructions for the field tests were given very quickly and it was not clear that Casper was unable to perform tasks as instructed. For example, when taking the HGN test, she initially moved her head slightly, but, when [the officer] reminded her that she was not to move her head at all, she fully complied. [The officer] nevertheless decided she failed to follow his instructions." 309 Kan. at 1219.

The court explained that field sobriety tests are not scientific and thus the district court must "evaluate [the defendant's] performance in light of how a reasonable person would respond to the officer's directions." 309 Kan. at 1219. Although the officer "testified that Casper scored 5 out of 8 on and failed the walk-and-turn test and scored 2 out of 4 on and failed the one-leg-stand test," those observations must be allowed to be "contested before a neutral fact-finder"; "[o]therwise, the arresting officer becomes the final arbiter of his or her own reasonableness." 309 Kan. at 1218-19.

While Vega-Ruiz likens the field sobriety test results here to those in *Casper*, the cases are distinguishable. Here, the district court heard testimony from the deputy regarding the clues of impairment noted from the sobriety field tests and found the deputy's explanation credible. While the deputy did not recall Vega-Ruiz' exact actions that established the clues of impairment, the deputy did testify about the types of actions that result in the notations he made. Additionally, unlike the circumstances in *Casper*, the deputy testified that at the time of the stop at 1:30 a.m., Vega-Ruiz had bloodshot eyes and initially lied about consuming alcohol that day. After denying he consumed alcohol, the deputy "informed [Vega-Ruiz] that [he] could smell the odor coming from his person," and then Vega-Ruiz stated he had "like, two" alcoholic drinks. Moreover, the deputy saw Vega-Ruiz unsafely operate his vehicle when he backed into the deputy's patrol car bumper, and he had heard from the sergeant that Vega-Ruiz had also unsafely

exited the DUI check lane area. Finally, unlike in *Casper*, no evidence contradicted the testimony of the deputy or sergeant regarding Vega-Ruiz' conduct.

On appeal, Vega-Ruiz appears to claim that the district court applied a lower standard in its determination that probable cause supported the arrest and argues that through some of its recent decisions, the Kansas Supreme Court "is implicitly reminding prosecutors, officers and courts alike that the Fourth Amendment applies equally to DUI cases and that no special rules or lower standards will be tolerated." See *City of Wichita v. Molitor*, 301 Kan. 251, 268-69, 341 P.3d 1275 (2015) (finding preliminary breath test results inadmissible after field sobriety testing indicated a lack of impairment); *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20-21, 290 P.3d 555 (2012) (questioning the line of cases relying on a standard of "more than a possibility" as the probable cause standard in DUI cases). Vega-Ruiz suggests the district court applied a lower standard because its conclusion relied on the officer's testimony alone and that testimony was based on the conclusions of the field sobriety test results as reported in the written report. Contrary to Vega-Ruiz' contention, however, nothing suggests that the district court applied a lesser standard. In fact, the district court cited to and applied the correct probable cause standard in its opinion. Although the deputy did not recall the specifics of each of Vega-Ruiz' errors on the sobriety field tests, the deputy's testimony buttressed the written report, and the district court was able to consider this in its evaluation of the credibility of the witness and the weight it placed on the results of the field sobriety tests. In *Casper*, the court cautioned against reassessing or reweighing the district court's factual findings underlying its probable cause determination when the district court "heard the witnesses, viewed their demeanor, and resolved conflicting evidence." 309 Kan. at 1220. Here—unlike in *Casper*—the district court was not presented with contradictory evidence. After hearing witnesses and weighing credibility, the district court found that under a totality of the circumstances—including Vega-Ruiz' unsafe driving, bloodshot eyes, dishonesty about alcohol consumption, and the field sobriety test results—the deputy had probable

9

cause to believe Vega-Ruiz was operating a vehicle under the influence of alcohol in violation of the law.

CONCLUSION

Substantial competent evidence supports the district court's factual findings. The sergeant monitoring the DUI check lane saw Vega-Ruiz drive in an unsafe manner to avoid the check lane at 1:30 a.m., and he subsequently notified the arresting deputy. Shortly thereafter, the deputy located Vega-Ruiz' vehicle and initiated a traffic stop where Vega-Ruiz reversed and backed into the bumper of the patrol vehicle. Upon contacting Vega-Ruiz, the deputy observed additional signs of impairment, including that Vega-Ruiz had bloodshot eyes and smelled of alcohol. Vega-Ruiz initially denied drinking, but he later admitted to having about two drinks. Based on these observations, the deputy conducted field sobriety tests where Vega-Ruiz demonstrated several clues of impairment. The totality of these circumstances supports the district court's finding that the deputy had probable cause to arrest Vega-Ruiz for suspicion of driving under the influence of alcohol in violation of the law.

Affirmed.